# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-21-187-C |
| | ) | |
| JOSÉ LUÍS AMADOR-BONILLA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Pursuant 18 U.S.C. §3553(a) and *United States v. Booker*, 125 S.Ct. 738 (2005), the Defendant, José Luís Amador Bonilla, through his attorney, Julia Summers, submits this sentencing memorandum to supplement the information contained in the Presentence Investigation Report (PSR), in support of a sentence below the bottom of the advisory guideline range as sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

### A. *Mr. Amador's background and the circumstances of his illegal reentry warrant a sentence below the advisory guideline range.*

Few of us can even begin to comprehend the struggle that has been Mr. Amador's life since the day he was born.. When he was a very small child, his parents took him and fled their native Nicaragua for their safety due to repression and threats from President Daniel Ortega's Marxist-Leninist "Sandinista" regime. (Ortega

is once again the president, since 2007, and is banned from entering the United States.) His parents separated and during his formative years he had very little contact or attention from his father. When his mother took up with another man – probably because of the financial stress of caring for her children on unimaginably meager income – mother and children endured traumatic physical and emotional abuse (including the sexual abuse and impregnation of his sister) for years. As a 15-year-old immigrant in Guatemala, seeing his family stuck in a life with no advantages and few options, he set out for the United States. The wages he earned here working under the table sustained his mother and younger siblings.

Unfortunately, when he was only 19 he was stopped by police for a traffic violation and unwisely (and perhaps naïvely) gave his "work" name to law enforcement. *See Attachment 1* (2005 Statement of Probable Cause). At the time he had no idea of the gravity and repercussions this would have on the rest of his life. Even though that very first felony punishment was probation, the conviction constituted an aggravated felony under 8 U.S.C. §1101(a)(43) which rendered him forever inadmissible to the U.S., and subject to increased penalties for unlawfully returning to the U.S. As a result, he has been formally removed four times (2006, 2007, 2015, 2019), and prosecuted twice before for illegal reentry. *See PSR ¶¶13, 32, 33*. He has forfeited a total of more than seven months of his life in the custody of ICE awaiting his removals, none of which time counted as credit toward his three

custodial sentences. Now 35, having spent roughly half of his adult life living and working at gainful, lawful occupations in this country in order to support his family, he faces yet another term of imprisonment for his unauthorized return to the U.S.

**B.    *The statutory objectives of sentencing will be accomplished through a sentence that is substantially less than the advisory guideline range.***

Mr. Amador's unlawful return to the U.S. was a crime of status, a regulatory crime, due to his Nicaraguan and Guatemalan citizenships. His return was motivated not by any immoral or malicious intention, but to work and earn money through honest labor to support his mother, siblings, and children. The guideline range recommended in this case is longer than necessary to reflect the seriousness of what he did, or to promote respect for the law. In fact, to impose a guidelines term will do the opposite of promoting respect for the law, because, given this crime's non-violent, non-injurious nature, the range is excessive even for a third illegal reentry prosecution and comes at a significant cost to taxpayers. *See PSR ¶73.*

The need to protect the public and deter future criminal conduct are another two sentencing factors which will be satisfied with a below-guidelines term. Mr. Amador's criminal history while significant is far from the worst, and suggests occasional lapses in judgment more than criminal thinking. Moreover, Mr. Amador had every intention of returning to Guatemala very soon of his own volition. In May 2021, he had traveled to Maryland to obtain a passport at the Guatemalan Consulate.

Attachment 2 is a photocopy image of his passport which was issued on May 10, 2021, only a few weeks before his arrest in Oklahoma City and the ensuing federal prosecution. Mr. Amador had accomplished his goal of paying off his mother's home in Guatemala and did not intend to remain in the U.S. any longer. He had missed his father's funeral due to previous incarceration for illegal reentry; as well as the burial of a sister who died of leukemia. He misses his family; he knows he is of no service to them while incarcerated; and, having made the journey from Central America through Mexico to reach the U.S. several times, he has increased concerns about the risks and personal costs of that dangerous journey. There is no reason this sentence needs to be longer than the previous term imposed to deter him from returning.

    Finally, Mr. Amador has no need that would be best met through imprisonment; knowing he faces some term of confinement, of course he hopes to take advantage of self-improvement and education opportunities that may present themselves. However, as a deportable alien, he is prohibited by law from receiving First Step time credits for completing programs in the Bureau of Prisons. 18 U.S.C. §3632(d)(4)(D). Furthermore, due to the First Step prohibition, it is likely he will be continually bumped down the waiting lists in favor of inmates who are eligible for the credits. And, unlike U.S. citizen inmates, because of the immigration detainer he will be ineligible for placement in a residential reentry center or home detention in the final months of his sentence. Thus, he faces harsher conditions of confinement than

citizen inmates, and that should be taken into account in determining what is just and fair.

C. *The Illegal Reentry guideline formula places excessive emphasis on Mr. Amador's criminal history, resulting in an unfair and overstated advisory punishment range.*

The defense urges the Court to consider the structure of the illegal reentry guideline which many courts and legal scholars have concluded is unfair and unsupportable due to its excessive emphasis on prior convictions over current criminal conduct. USSG §2L1.2 is unusually severe because, unlike most other guideline formulas, it relies on prior convictions rather than current offense characteristics to increase the base offense level, even though the criminal history calculation at USSG §4A1.1 also counts the same convictions to increase the criminal history category. This double-counting is an exception to the usual approach of the sentencing guidelines and has been found to warrant downward variances. *See, e.g., United States v. Santos,* 406 F.Supp.2d 320 (S.D.N.Y 2005) (imposing 24-month sentence when guideline range was 57-71 months and explicitly departing 3 levels downward to offset double-counting); *United States v. Zapata-Trevino,* 378 F.Supp.2d 1321 (D.N.M 2005) (imposing 15-month sentence when advisory range was 41-51 months, finding that double-counting criminal history was "overly punitive"); *United States v. Galvez-Barrios,* 355 F.Supp.2d 958 (E.D. Wis. 2005) (imposing 24-month sentence when guideline range was 41-51 months, in part

5

because double-counting was unreasonable).

The base offense level in an illegal reentry case is eight. In this case, either one of Mr. Amador's federal illegal reentry convictions adds four levels to the offense level calculation. *PSR ¶19*. Then, they are both counted for criminal history: the earliest of these also adds two points to the criminal history calculation, and the more recent one adds three criminal history points. *PSR ¶¶32, 33*. Then, his 2005 attempted forgery state conviction adds another eight levels to the offense level, plus three points to the criminal history calculation. *PSR ¶¶20,30*. Finally, because Mr. Amador's *unsupervised* release period from the 2017 illegal reentry case was still in effect when he returned a year later in December 2020, two criminal history points are added for "status." *PSR ¶35*. Thus, these prior convictions <u>more than double</u> the base offense level (from 8 to 20, before adjusting for acceptance of responsibility) for his instant crime, and they comprise 10 of his 12 criminal history points, placing him in Criminal History Category V. The net result is that the guidelines ask the Court to pay way more attention to Mr. Amador's past crimes than to his current offense. As the District Court noted in *United States v. Galvez-Barrios,* 355 F.Supp.2d 958, 964 (E.D. Wisc. 2005), "although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis."

The illegal reentry formula is fundamentally flawed in that it was not based on

6

empirical research concerning deterrent efficacy or any other variable relevant to the purposes of sentencing. *See United States v. Perez-Nunez,* 368 F.Supp.2d 1265, 1268 (D.N.M. 2005) (observing the Commission "did no study to determine if such sentences were necessary or desirable from any penal theory") (quoting Robert J. McWhirter & Jon M. Sands, "Does the Punishment Fit the Crime?  A Defense Perspective on Sentencing in Aggravated Felon Re-Entry Cases," 8 Fed. Sent'g Rep. 275 (Apr.1, 1996)).  Moreover, the Sentencing Commission has failed to adequately explain why so much weight is placed on prior convictions in this guideline, nor has it provided any justification for double-counting a single prior conviction by using it to calculate both the offense level and the criminal history category.

The lack of an empirically supported basis means §2L1.2 proffers unreliable sentencing ranges.  It relies on past wrongs, to the exclusion of other §3553(a) factors. The guideline drives "the offense level to a point higher than...necessary to do justice in this case." *Kimbrough v. United States,* 552 U.S. 85, 111 (2007).  This twelve-level increase applied to Mr. Amador's base offense level is excessively severe and warrants a reduced sentence.  Furthermore, to presume the twelve-level increase to be reasonable would be reversible error. *Nelson v. United States,* 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").  The defense recognizes double-counting has been declared permissible by appellate courts.

Notwithstanding, this Court's duty is to determine the minimally sufficient sentence to promote the purposes set forth in 18 U.S.C. §3553(a), and it has full discretion to do so, uninhibited by what is in fact an arbitrary and unsupported guideline formula that emphasizes criminal history more than the present crime and fails to account for Mr. Amador's personal circumstances, motivation, and family responsibilities and the objectives of sentencing set forth in 18 U.S.C. §3553(a). Mr. Amador urges the Court to grant a downward variance under 18 U.S.C. §3553(a) based on the excessive and unwarranted severity of the illegal reentry guideline itself. *See Kimbrough v. United States,* 552 U.S. 85, 110-11 (2007) (holding a Court may vary from the Guidelines based on policy disagreements with the Guideline itself).

## CONCLUSION

This Court's directive is to impose a sentence that is "sufficient, but not greater than necessary" to fulfill the statutory objectives of sentencing. 18 U.S.C. §3553(a). Mr. Amador has already been in total, continuous custody for more than seven months as of this writing. The 35 days he spent in ICE custody will not be counted by the Bureau of Prisons toward any sentence this Court imposes. At the very least, this Court should vary downwards from the advisory guideline range to account for Mr. Aamdor's time in ICE custody, as argued in the PSR Addendum. But the defense submits a greater downward variance is warranted. What is "just" punishment for a man who has literally risked his life to cross multiple borders with hopes of working

8

to support the people who love and depend on him? He realized his goal, and he intended to return home anyway. Furthermore, facing his third punishment for returning unlawfully, seeing how the guidelines recommendation grows each time, has convinced him the idea of unlawfully returning to the United States is no longer worth the risks and costs. Mr. Amador does not seek to avoid punishment, he only asks for a fair punishment. The defense submits the advisory guideline at 46 to 57 months overstates the gravity of Mr. Amador's unlawful reentry and unnecessarily burdens taxpayers. The advisory range overstates what is needed to satisfy the statutory goals of sentencing. The defense therefore respectfully requests a fair sentence below the advisory guideline range.

Respectfully submitted,

s/ Julia C. Summers
JULIA C. SUMMERS, OBA #15851
Assistant Federal Public Defender
215 Dean A. McGee, Suite 109
Oklahoma City, OK 73102
Phone:     (405) 609-5963
Fax:       (405) 609-5932
E-mail:    julia.summers@fd.org
COUNSEL FOR DEFENDANT,
JOSÉ LUÍS AMADOR BONILLA

CERTIFICATE OF SERVICE

      I hereby certify that on this 19th day of January, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to Assistant United States Attorneys Brandon Hale and Steven Creager.

                                          s/ Julia C. Summers
                                          JULIA C. SUMMERS